1

2

3                  UNITED STATES DISTRICT COURT

4                  EASTERN DISTRICT OF WASHINGTON

5   DANIEL J. DICE,                    )
                                       )
6              Plaintiff,              )     NO. 11-CV-296-JLQ
                                       )
7        v.                            )     MEMORANDUM OPINION
                                       )     AND ORDER ON  SUMMARY
8                                      )     JUDGMENT MOTIONS; GRANTING
    CITY OF GRAND COULEE, and          )     PLAINTIFF LEAVE TO AMEND
9   MEL O. HUNT and JANE DOE           )
    HUNT, husband and wife,            )
10                                     )
               Defendants.             )
11  _____)

12          BEFORE THE COURT is Defendants' Motion for (Partial) Summary

13   Judgment (ECF No. 19) and Plaintiff's Motion for Partial Summary Judgment Re:

14   Wrongful Discharge and Double Damages (ECF No. 28).  For the reasons set forth

15   below, Defendants' Motion is granted in part and denied in part, and Plaintiff's

16   Motion is denied in its entirety.

17   **I.     INTRODUCTION AND PROCEDURAL HISTORY**

18          On August 5, 2011, Plaintiff filed a Complaint asserting violations of 42

19   U.S.C § 1983 and state law wage claims arising out of his termination as a police

20   officer for the City of Grand Coulee, Washington.

21          On February 16, 2012, at the telephonic scheduling conference, the court

22   questioned whether Plaintiff's Complaint stated a proper federal claim for failure of

23   the Defendants to provide due process.   ECF No. 16 at 1.  The court then ordered

24   the Defendants to file an early summary judgment motion "or other appropriate

25   pleading as to the legal sufficiency of the federal claims in the Complaint..." *Id.*

26          On March 15, 2012, Defendants filed a Motion for Summary Judgment

27   contending that Plaintiff's civil rights claims are barred by estoppel because Plaintiff

28   opted to pursue a grievance and arbitration through his union pursuant to a

ORDER – 1

1    collective bargaining agreement with the City.

2          On April 13, 2012, Plaintiff filed a Motion for Partial Summary Judgment on

3    his state law claim(s), and requested oral argument.

4          After hearing oral argument on the Motions on June 1, 2012, the court

5    ordered the parties to supplement the record to specifically address the legal

6    adequacy of Plaintiff's federal claims *as pleaded* under applicable procedural and

7    substantive due process standards.  The court also granted counsel leave to file

8    additional briefing and granted Plaintiff leave to file an Amended Complaint to

9    actually plead the claim of wrongful discharge to which his summary judgment

10   motion partially pertained.   The court entered a written order explaining these

11   rulings.  (ECF No. 39).

12         Thereafter, Plaintiff filed an Amended Complaint, the parties jointly filed

13   additional documents to supplement the summary judgment record (ECF No. 47)

14   and separately filed supplemental briefs (ECF Nos. 48, 50).

15   **II.    FACTS**

16         Plaintiff Daniel Dice was a ten-year police officer for the City of Grand

17   Coulee, Washington.   His last position held was Narcotics K-9 Officer.  In April

18   2008, the City commenced disciplinary investigations of the Plaintiff based upon

19   three separate incidents occurring within the one-month span of March 19, 2008 to

20   April 14, 2008.  Each investigation resulted in the City's issuance of separate

21   employment disciplines. On July 3, 2008, Plaintiff was issued a written reprimand

22   for failure to investigate a civil complaint regarding the shooting of a fellow

23   officer's pet. On July 27, 2008, he was suspended for ten-days without pay for

24   having caused photographs of an officer's vehicle to be taken and sent to that

25   officer's wife. On August 8, 2008, Plaintiff was terminated from his position for

26   having handcuffed a suspect on April 14, 2008 in front of his body.  (ECF No. 22,

27   Ex. B at 4).

28         It is undisputed that on August 12, 2008, Plaintiff sent "a letter to the Civil

Service Commission requesting an investigation into his discipline and termination."
(ECF No. 40, ¶ 4.10, ECF No. 51 at ¶ 20).  Two days later, on August 14, 2008,
another letter was sent to the "City of Grand Coulee requesting the Civil Service
Commission...investigate the termination...."  (ECF No. 40, ¶ 4.11, ECF No. 51 at ¶
21).  It is further undisputed in the parties' pleadings that the Civil Service
Commission "refused to investigate" the termination. (ECF No. 40 ¶¶ 4.12; ECF No.
51 ¶¶ 22).    The summary judgment record contains no evidence of the City's
response or the law governing grievances filed before the Commission, nor is there
any contention that Plaintiff appealed the City's response.

    Dice was a member of Teamsters Local 760 ("the Union"), which had a
Collective Bargaining Agreement ("CBA") with the City.  The CBA's preamble
states its purpose is the "setting forth the mutual understanding of the parties
regarding wages, hours, and working conditions."  (ECF No. 24 at 14).   The CBA
includes a provision stating the City may discipline an employee "based on just
cause." (ECF No. 24 at 22). The CBA sets forth a multi-step grievance process an
aggrieved employee "*may* apply for relief under" for alleged violations of the CBA.
(ECF No. 24, Ex. 3. at 18).  If a formal CBA grievance is not resolved at Step 1 or
Step 2, the CBA provides that at Step 3, "either party to this Agreement may refer
the unsettled grievance to final and binding arbitration."  (ECF No. 24, Ex. 3 at 19).

    It is undisputed Dice (or his Union representative) initiated the CBA
grievance process and filed grievances challenging all three disciplinary measures
taken by the City against him as being "without just cause."  Presumably at "Step
1," the "City rejected all three grievances," as indicated in the arbitration decision
(ECF No. 22 at 10).  Correspondence between the Union and the City's counsel
between August 28, 2008 and September 3, 2008, indicates a "step 2 grievance
meeting [was] held" with the Union and the City, and thereafter, at the request of the
Union, the City agreed to "bundle" all three grievances into one case for arbitration.
(ECF No. 47 at 15-16). On September 11, 2008, a representative of the Union

ORDER – 3

advised counsel for the City that it would be "filing for arbitration immediately" (ECF No. 47 at 18).

The CBA sets forth Step 3 time limitations. It provides that the parties "shall select an impartial arbitrator within thirty (30) days, if possible..." (ECF No. 24, Ex. 3 at 19). By September 25, 2008, the parties had agreed to the selection of Gary Axon as the arbitrator and requested he provide the parties with available hearing dates beginning in November 2008. (ECF No. 47). The CBA calls for the arbitrator to "meet and hear the matter at the earliest possible date after selection of said arbitrator." (ECF No. 24, Ex. 3 at 19). On October 6, 2008, Mr. Axon wrote the parties confirming his acceptance of the case, offering available arbitration dates in the months of January, March, April or May, 2009. (ECF No. 47 at 23). Plaintiff contends he sought an arbitration hearing date in January of 2009, but that the City's attorney would not agree to a date earlier than April, 2009. On October 17, 2008, the parties agreed to hold the arbitration in April, 2009. (ECF No. 47 at 24).

On April 15 and 16, 2009, the grievances proceeded to arbitration. A hearing was held before the arbitrator pursuant to the CBA. The CBA sets forth the scope of the power of the arbitrator: "The arbitrator shall have the power to interpret and apply the terms of the [Collective Bargaining] Agreement and/or determine whether there has been a violation of the terms of this Agreement." (ECF No. 24 at 19). The next section, entitled "Arbitration Award - Damages - Expenses" states that the arbitrator has no authority to award punitive damages and that the parties shall share the cost of expenses of the arbitrator. (ECF No. 24 at 19).

Both the Plaintiff and the City were represented by counsel at the arbitration. Three issues were presented to the arbitrator: 1) Whether the written reprimand issued on July 3, 2008 was for cause? If not, what is the appropriate remedy?; 2) Whether the ten-day suspension issued July 23, 2008 was for just cause? If not, what is the appropriate remedy?; and 3) Whether the termination issued August 8, 2008 was for just cause? If not, what is the appropriate remedy?.

The arbitrator's decision states "both parties were accorded the full and complete opportunity to present evidence and argument in support of their respective positions. *Post-hearing briefs* were timely filed." Both sides were allowed to call and cross-examine witnesses.

The CBA states that "[a]fter completion of the hearing, a decision shall be entered within thirty (30) calendar days or as soon as possible thereafter, unless an extension of time is agreed upon as provided for herein." (ECF No. 24, Ex. 3 at 19). On August 10, 2009, the arbitrator issued a 29-page written decision in favor of the Plaintiff. The arbitrator found that Plaintiff's termination was not for "just cause." The City was ordered to make the Plaintiff "whole for all wages and benefits lost as a result of the termination..." (ECF No. 22 at 38).

After the arbitration decision, the City calculated the award based upon wages (including average overtime) and benefits (vacation, out of pocket medical, uniform allowance, and retirement) if Dice had remained employed through September 2009. They subtracted his unemployment payments and wages earned with Pend Oreille County during this period. In October 2009, Plaintiff was paid what appears to be $37,557.64 for wages and vacation, plus $1270.18 in a retroactive retirement fund contribution. (ECF No. 24, Ex. 2). Plaintiff and the Union refused to agree to the City's belated proposal that final payment be contingent upon Plaintiff signing a "complete release...of any and all claims or liabilities related to or arising out of the Dice's employment with or separation from the City." (ECF No. 24, Ex. 2).

It remains unclear whether the City actually made the Plaintiff an offer for reinstatement. Reinstatement was not ordered by the arbitrator, nor does the CBA state the arbitrator had the power to order reinstatement. A letter in the record dated September 22, 2009 from the City's attorney to the Union states that the City "accept[s] Mr. Dice's decision and the Union's notification that Mr. Dice has elected not to return to the employment of the City." (ECF No. 36, Ex. A). However, there

is no written evidence of any re-employment offer by the City, and Plaintiff specifically denies he refused such an offer.

Plaintiff initiated this action on August 5, 2011 (ECF No. 1) against the City and the Chief of Police seeking "recovery of damages and remedies which were unavailable for Plaintiff in arbitration." (ECF No. 37 at 2).   The Amended Complaint filed on June 14, 2012 (ECF No. 40) asserts 1) a federal claim under 42 U.S.C. §. 1983 for violation of due process (both substantive and procedural); 2) a state law claim for wrongful withholding of wages under "RCW 49.52 and 49.48"; and 3) a state law claim for wrongful discharge.  Plaintiff seeks double back pay wages, "emotional damages," reinstatement, punitive damages, and attorney's fees. Plaintiff claims that besides lost wages and benefits, he suffered emotional distress and other "economic costs" as a result of his without cause firing.  He claims that during the year-long delay between the time he was terminated without cause and the arbitrator's decision, he was unable to find work for six months due to the termination; he was forced to look for work elsewhere and when he became re-employed with Pend Oreille County Sheriff, it was for less pay, required that he maintain households in two places, and ultimately required his family to relocate.

## III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed.R.Civ.P. 56(c); *see also Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Barlow v. Ground*, 943 F.2d 1132, 1134–36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants' initial moving papers rested solely upon a preclusion argument: that Plaintiff had "already litigated his claim and received a remedy" and he was therefore Plaintiff precluded from seeking relief under § 1983.  The court rejected this argument in its June 4, 2012 Order and the court's rationale will not be repeated herein.  (ECF No. 39).  Per the court's direction following oral argument, Defendants have filed a Supplemental Brief focused on the legal adequacy of the due process claims.

### A.    Procedural Due Process

To plead a violation of procedural due process, a plaintiff must allege (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Tutor–Saliba Corp. v. City of Hailey*, 452

F.3d 1055, 1061 (9th Cir. 2006).

   *1. Civil Service Commission*

   Plaintiff's Amended Complaint alleges the City deprived him of procedural due process by "failing to provide him with a fair hearing before a neutral decision maker" (¶ 5.11) and "by refusing to provide him a hearing before the Civil Service Commission" (¶ 5.12).  There is no contention, nor could there be, that the *arbitrator* was not a "neutral decision maker."  Instead, it appears *both* of Plaintiff's contentions concern the City's Civil Service Commission inaction.  Although the court provided the parties the opportunity to supplement the record on this issue, the summary judgment record still contains no evidence regarding the process, if any, involving the Civil Service Commission.  Accordingly, the only relevant facts the court has before it are those alleged in the Amended Complaint and admitted in the City's Answer, i.e. that 1) Plaintiff sent letters to the Civil Service Commission and to the City requesting an investigation of his discipline and termination; and 2) the Civil Service Commission "refused to investigate" the termination. (ECF No. 40 ¶¶ 4.12; ECF No. 51 ¶¶ 22).

   Assuming the City's Civil Service Commission declined to investigate Plaintiff's complaint, this allegation alone, is insufficient to state a claim for a violation of due process – there is no general constitutional right to an investigation by government officials.  The Due Process Clause of the Fourteenth Amendment generally does not confer an affirmative right to government aid.  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).

   While it is a true a public servant such as a police officer may have multiple available avenues through which to pursue an employment dispute, if the employee elects to pursue the internal administrative process (such as a Civil Service Commission) that employee has the burden of exhausting his administrative and judicial remedies before pursuing a claim for damages.  *See  Fallon v. City of Leavenworth*, 42 Wash.App. 766 (1985)(exhaustion of administrative remedies

required prior to filing an action for writ of mandamus);  *Miller v. County of Santa Cruz,* 39 F.3d 1030 (9th Cir. 1994)(dismissing § 1983 claim because Plaintiff failed to seek review of adverse decision of City Civil Service Commission).  This rule arises out of concerns of comity and finality, and respect for state court systems to review  *administrative* decisions.  *Miller*, 39 F.3d at 1038. In this case, there is no allegation or even suggestion that Plaintiff ever sought any type of administrative or judicial review of the City's *administrative* decision refusing to provide him a hearing.  Accordingly, Plaintiff's Amended Complaint fails to state a claim for violation of procedural due process claim concerning his Civil Service request and that claim is dismissed without prejudice.

   *2. Delay*

   Plaintiff's Supplemental Brief ignores the aforementioned "lack of investigation" due process claim which he pleaded in the Amended Complaint. Instead, half of the brief is devoted to developing and defending the viability of an unasserted due process claim with a factual basis clearly distinct from that of the "lack of investigation" asserted claim: that the alleged procedural due process violation was the "substantial delay in post deprivation process Plaintiff Dice received." (ECF No. 50 at 5).  Plaintiff's Supplemental Brief argues the process Plaintiff received pursuant to the Collective Bargaining Agreement took too long: Eight months post-termination for the arbitration hearing; four months later the arbitrator issued his decision; and then, two months later -14 months post-termination- Plaintiff was allegedly only *partially* compensated.

   Although Plaintiff's counsel mentioned this potential contention during oral argument, <u>Plaintiff did not include it in the Amended Complaint which he filed after oral argument was heard</u>.  The question therefore arises whether, having the benefit of the court's analysis herein, Plaintiff ought to be afforded yet a *second* opportunity to amend the complaint in order to plead this new claim.  Defendants' Supplemental Brief points to the fact the Amended Complaint does not allege delay as a basis for

the due process claim. But it also nevertheless argues the merits, contending that there was no improper delay in the grievance procedure.

Though not cited by either side, the court is aware of one case in a post-termination setting wherein it was held that procedural due process was not satisfied, in part, because the grievance process was too slow.   Judge Posner, writing for the Seventh Circuit in *Parrett v. City of Connersville*, stated that, the circumstances of the grievance process between a town and a union representing the town's constructively discharged police officer violated the Fourteenth Amendment. *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir.1984), cert. dismissed, 469 U.S. 1145 (1985).  The arbitration hearing was held four months after the grievance was filed, and the arbitrator's decision was rendered just over two months after the hearing.  The arbitrator could not award the employee any damages beyond restoring the pay the employee had lost.  The *Parrett* Court held that the grievance process as it was specifically administered in that instance was unconstitutional because the "grievance machinery worked so sluggishly" along with the fact that the arbitrator could not award full common-law damages or grant injunctive relief to prevent harm from occurring to the grievant.   *Id.*

> This is not to say that arbitration cannot satisfy the requirements of due process unless the arbitrator is empowered to award full common law damages. But if he cannot, then he must be able to prevent the harm to the grievant before it occurs, which requires faster action than was taken by the arbitrator in this case.

*Id. Parrett* affirmed the jury's § 1983 award in favor of the Plaintiff for $320,000 in compensatory damages, plus punitive damages which the court reduced to $68,000.

While not binding, the court is persuaded by the *Parrett* reasoning and its similarities with the facts of this case.  The court is satisfied it should not deny leave to amend the complaint to allege the delay due process claim for futility or the inevitability of the claim's defeat.  The rules of pleading weigh in favor of granting Plaintiff the opportunity to amend yet a second time.

ORDER – 10

**B. Substantive Due Process**

Defendants have also moved for summary judgment on Plaintiff's claim under § 1983 for violation of *substantive* due process.  Plaintiff contends his termination was "arbitrary and capricious" and "shocks the conscience" because the reason he was terminated was for failing to abide by an unconstitutional handcuffing policy contrary to the law of excessive force. Plaintiff alleges the stated reason was in fact a pretext for the real reason behind his termination "which may include nepotism" on the part of the chief of police, Defendant Hunt (ECF No. 40 at ¶ 5.51).

Substantive due process under the Fourteenth Amendment "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998), *quoting United States v. Salerno*, 481 U.S. 739, 746 (1987). "'It serves to prevent governmental power from being "used for purposes of oppression."' *Sagana v. Tenorio*, 384 F.3d 731, 742 (9th Cir. 2004) (citations omitted). When making a substantive due process claim, the plaintiff must show a "government deprivation of life, liberty, or property." *Id*. at 871 (citations omitted).

1. *Fundamental Right*

Substantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties, such as marriage, family, procreation, and bodily integrity.  Defendants' Supplemental Brief outlines decisions from other circuit courts holding that substantive due process does not apply in the context of a wrongful termination of a public employee.  The Ninth Circuit has not yet ruled conclusively on this issue.  However, in *Jackson v. Gates*, 975 F.2d 648, 656-57 (9th Cir. 1992), the Ninth Circuit determined that the employee had not proved substantive due process *because the conduct was not clearly arbitrary or unreasonable*, not because there was no fundamental right at issue.

2. *Arbitrary / Conscience Shocking*

ORDER – 11

Assuming, without deciding, that the Ninth Circuit would recognize a substantive due process right in Plaintiff's public employment, the next question is whether the allegations of the City's termination in this case rises to the level of the egregious, arbitrary, conscience-shocking behavior necessary to maintain a claimed violation of substantive due process by public officials. Such claims must meet a high standard, even when the conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee. *See e.g.*, *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992)(permitting substantive due process action where supervisor of public employee places employee in exceptional danger and was raped as a result)*; Harrington v. Harris*, 118 F.3d 359 (5th Cir. 1997)(deans of public law school violated substantive due process rights of law school professors when acting in arbitrary and capricious manner in their merit pay evaluations); *cf., Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012)(though "troubling," the plaintiff's receipt of 24 bogus parking tickets from officers in one police unit did not "shock the conscience" in the sense required in due process cases). In *Jackson v. Gates*, the Ninth Circuit held that in order to support a claimed violation of an individual's substantive due process rights, a municipality's conduct must be " 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " *F.D.I.C. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991) (quoting *Lebbos v. Judges of Super. Ct., Santa Clara County*, 883 F.2d 810, 818 (9th Cir. 1989)).

The Ninth Circuit's decision in *Jackson* is instructive here as it held that the termination of the police officer *for failing to comply with an unconstitutional directive* (to provide a urine sample) was not constitutionally defective on its face, or "wholly arbitrary or unreasonable." Here, Plaintiff's termination based upon the City's policy that there was to be no handcuffing of suspects in front of their person when transporting or preparing for transport, constitutional or not, is not wholly arbitrary or unreasonable. However, the court will not dispose of Plaintiff's

substantive due process claim at this early stage without allowing Plaintiff the opportunity to conduct discovery as to his alternative assertion that the City's decision to terminate him was in fact motivated by ill will, nepotism, or some ulterior motive *unrelated to the handcuffing policy. Cf., London v. Directors of DeWitt Public Schools*, 194 F.3d 873 (8th Cir. 1999)(failing to establish a substantive due process violation in connection with student's physical altercation with teacher, where there was no evidence of bad faith or ill-will).

Defendant's Motion for Summary Judgment as to Plaintiff's substantive due process claim is denied at this time, but may be renewed at a later date once the opportunity to conduct discovery on this claim has occurred.

**V.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff's early Motion for Summary Judgment requests the court to determine that Plaintiff is entitled to double unpaid wages.  However, a review of this request reveals double damages are not authorized in this case.  Double damages are authorized as a civil remedy under RCW 49.52.070 against any employer who "[w]ilfully and with intent to deprive the employee of any part of his wages, [pays the] employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.050(2); *Schilling v. Radio Holdings, Inc*., 136 Wash.2d 152, 158, 961 P.2d 371 (1998). The statute provides that any employer who willfully refuses to pay an employee's wages is liable for twice the wages unlawfully withheld, together with the costs of the suit and reasonable attorney fees. RCW 49.52.070.

Plaintiff claims the City's termination of him without pay, determined to be without cause a year later, wilfully deprived him of wages owed.  However, according to *Hemmings v. Tidyman's, Inc*., 285 F.3d 1174, 1203 (9th Cir. 2002) (applying Washington law, and not cited by either party), RCW 49.52.050 applies only when an employer has a pre-existing duty under contract or statute to pay a specific compensation.   The case holds that when the employer's obligation to pay a

specific amount does not legally accrue until a jury verdict, the employer cannot be said to have consciously withheld a quantifiable and undisputed amount of accrued pay. *Hemmings*, 285 F.3d at 1203.  Applying *Hemmings* to this case where Plaintiff was terminated, the City's obligation to pay him wages did not accrue until the arbitrator's decision was rendered.  There is no allegation there was an unlawful delay in payment once the arbitrator's award was issued.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**. Plaintiff's claim for willful withholding of wages in the Amended Complaint fails as a matter of law.

## VI.    CONCLUSION

IT IS HEREBY ORDERED:

1. Defendant's (Partial) Motion for Summary Judgment (ECF No. 19) is GRANTED as to Plaintiff's procedural due process claim *as pleaded*, but **DENIED** as to Plaintiff's substantive due process claim.  Plaintiff is granted LEAVE TO AMEND to specifically state a  procedural due process claim upon wrongful delay. Any Second Amended Complaint shall be filed within fourteen (14) days of this Order and shall not re-assert the claims rejected herein.

2. Plaintiff's Motion for (Partial) Summary Judgment Re: Wrongful Discharge and Double Damages (ECF No. 28) is **DENIED**.  Plaintiff's state law claim for willful withholding of wages is **DENIED**.

IT IS SO ORDERED.  The Clerk shall enter this Order and provide copies to counsel.

DATED this 9^(TH) day of October, 2012.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE